Crane Works, L.P. v. Zurich American Insurance Company. We appreciate the cooperation over several months of all counsel on both sides and all the rescheduling and dislocations and we're glad that you're here and we call now on Mr. Long. Good afternoon. I'm Pete Long from Jones and Dallas representing Maxine Crane. We appreciate the opportunity for oral argument today in person and in what we hope will be a sustainable recovery from COVID 18 months ago, I could barely say zoom and now I use it as a verb. So it's it's momentous for all of us to be here in person and we appreciate it. The central question in this appeal is whether the term employee in the exception to the prohibition on additional insured coverage and indemnification should be construed narrowly so as to apply to a co-employee or relationship or broadly. The Texas legislature was crystal clear under the Texas Anti-Indemnity Act that indemnification by a party, the indemnitor, for an injury to that party's employees is allowed. The indemnitor can indemnify a party for that party's own negligence as long as the injury is to the indemnifying party's employee and it can also provide additional insured coverage. We submit there's no reason why that should not apply in the context of a co-employee which is what this situation involves. Zerk's argument relies on a narrow reading of the term employee in the Anti-Indemnity Act. It requires the court, we say, to ignore the statutory history or legislative history of the statute which allows broad coverage, broad indemnification, and additional insured coverage for third party overactions by employees of the indemnifying party. So your position is that the word employee has to be read, understood, and construed the same way in the Workers' Compensation Act as in the Anti-Indemnity Act? Not precisely, Your Honor. What we say is that when you look at the purpose behind TIA which was to allow broad coverage for third party indemnity, for third party overactions, that employee and co-employee are functionally identical. There's no cross-reference in the Anti-Indemnity Act to the Texas Workers' Compensation Act so I'm not sure trying to parse definitions out of that act particularly bring more clarity but rather we think that the intent behind the Anti-Indemnity Act which allows a very broad exception for indemnification for employee claims should also apply to co-employee claims. I'll start with briefly a couple minutes on the facts. In the underlying case, I'll turn to the issues on Zerk's side of the appeal standing very I'll then turn to the TIA, the Texas Anti-Indemnity Act, principally briefed by Maxim, and then I'll turn briefly to the certification questions, obviously subject to the court's desires as to what I cover. The underlying case is both complex and simple. It involved a construction project in Houston. Skanska was the general contractor and Burkle its subcontractor. We really know the underlying facts. I've been looking at those for many months so you can go ahead and move to your legal argument. Not a problem. The key part about the legal relationship there, as the court knows, is that there was what's a workers' compensation CSIP, a contractor controlled insurance program that covered all employees, all contractors, all subcontractors, and all employees. The effect of that is that each employer, each contractor and subcontractor was immune for tort claims as if it was the employer of any of the employees of any of the other construction parties. And we think that's key to set the stage here because the Lee versus Burkle decision involved a co-employee. Are you going to be talking about the standing issue? Yes. Okay. So, we'll generally, in terms of standing, we'll generally, we're generally content to stand on our briefs. But a couple... You certainly don't waive anything that's in your briefs, so that's fine. But if you want to talk about it, you can. Zurich frames it as an issue of standing, but we would say that's really a straightforward argument of statutory interpretation, of contract interpretation. Zurich is correct that Maxim assigned to its subrogation rights for amounts that were reimbursable. That is an amount that has not yet been paid by Maxim but would eventually be paid by Maxim to Zurich. But if one thinks about subrogation, the principle behind subrogation, form book law, is that a party is subrogated for a loss that it has actually paid. In this particular circumstance, because Zurich had a $3 million deductible in its policy issued to Maxim, Zurich didn't actually sustain that loss. And so there's no reason under the contract, nor is there any reason under subrogation law for Zurich to have the sole right to pursue a loss it actually didn't sustain. And so this has to be Maxim's right. Maxim is, in fact, the party that suffered the loss, and it should have the right to claim against Zurich in this case. It's also complicated in this case, sort of uniquely by the fact that Zurich is on both sides of this transaction. Zurich is both Maxim's CGL insurer and, of course, is Berkel's insurer under the CSIP. Counsel, suppose you lose on the standing argument. Does that change the district court's judgment in any way? Does it change the district court's? I'm sorry, I didn't hear the end of it. Sorry. Does it change the district court's judgment in any way? I think if we lose on standing, what means is we simply can't proceed here. We would simply affirm the district court's judgment. That's my understanding. Would it in any way lessen Maxim's rights or increase Zurich's rights if you lost on standing? It would certainly lessen Maxim's rights. How so? Because we wouldn't get a determination on the merits of the issue other than that by the district court, which we claim was in error. But we would simply affirm the district court's judgment that you lose, right? You would affirm the district. I presume that would be the outcome if we can't get standing. So how is it a proper cross-appeal? I'm sorry, I'm having a little— How is it a proper cross-appeal? If it doesn't do anything to change the district court's judgment, how is your friend on the other side's cross-appeal properly before us? Well, I think what they argue is that we didn't have the right to bring this case against him in the first place under the contract. We don't think it's a proper cross-appeal, but that's up for the court to determine. Well, you didn't file a motion to dismiss it, did you? We did not. We argued the merits of it, which is what we thought was proper at the time to do. The court, I think, is well aware of the statutory background and legislative history behind the Texas Anti-Indemnity Act, but I think there are a few things worth emphasizing. This is a combination of the legislative history, which we relied on in the proceeding at the trial court level, and also what has been written by a variety of commentators. The principle ill that the Texas Anti-Indemnity Act sought to eradicate was crammed down indemnification, and there's both, as the court knows, there's the Anti-Indemnity Act, which applies to construction matters, and there's a very similar act which applies to oil field claims, although it's not exactly identical. But in looking at the legislative history, one of the key things the legislature was concerned about was this sort of crammed down indemnification, where owners or general contractors would say to people below them in the food chain or the contracting tier, you're going to indemnify me, and the people lower in the food chain had no bargaining power. So that was a principle ill focused upon in the legislative history behind Senate Bill 361. The trial court, by the way, looked at House Bill 2093 rather than Senate Bill 361, and so where the court talks about there being no legislative history, it's not clear to us whether the court actually reviewed the 361 history cited in the party's brief. Here there's no issue with crammed down indemnification. Maxim was actually below Burkle in the contracting regime. Maxim was Burkle's supplier, and Burkle was Maxim's customer. So if Burkle, for example, didn't like the indemnification provisions or the additional insured provisions, he could have gotten a crane somewhere else. Before the Texas Anti-Indemnity Act, of course, common law in Texas was that a party could its own negligence in certain circumstances. Texas Anti-Indemnity Act disallowed that, and the question is, in what circumstances should it disallow such indemnification? Since there's no question that Burkle could indemnify and provide additional insurance for an injury to Burkle's employee, we see no principled reason why that shouldn't imply to a co-employee, because for all intents and purposes, the co-employee status is the same as Lee being Burkle's employee. Burkle got complete tort immunity from a suit by Lee, and Lee was fully protected by the workers' comp regime. I assume there's no dispute that the indemnitory here is Burkle? Yes. For purposes of this text? Yes. Okay. So the only way you can prevail in this argument is if Lee is somehow the employee of Burkle? Not if Lee is the employee of Burkle. We say that when one construes the word employee in the employee exception to the Anti-Indemnity Act, that employee should be construed synonymously as co-employee. But those are two different concepts, aren't they? I mean, one is an employer-employee relationship, one is a co-worker. It's a horizontal relationship. They are somewhat different legal relationships. We would submit it doesn't make any difference here because the effect of all of it is the same. And as the Court knows from our briefing . . . How do you reconcile that with the text? I'm sorry? How do you reconcile that with the text? I don't know what the Texas . . . why the Texas legislature used the term employee rather than employee-co-employee, but it didn't only use the term employee. It says employee, agent, or subcontractor of any tier. And so, it is clear that the Texas legislature was willing to apply a fairly broad exception to the Anti-Indemnification Prohibition under the Texas Anti-Indemnity Act. Okay, but Lee wasn't any of those things vis-a-vis Burkle. I think that the . . . Zurich certainly puts talismanic significance on the description in the Lee versus Burkle case in which the Court . . . I'm just talking about the text. I'm sorry? I'm just looking at the text of the statute. It uses the word employee. Right. No arguing against that here. Okay. We would simply say that if one looks behind the Act, looks behind the curtain as it were, that the concept of employee and co-employee are effectively synonymous legally because it's the exact same situation. The employer receives immunity from a claim by its employee under the OSIP situation or CSIP situation here, and it receives the exact same indemnity because Lee was deemed to be its co-employee. So, it's the same situation. And in construing the Texas Anti-Indemnity Act, there's no principled reason why the legislature would have intended something different. It clearly has an exception that allows broad indemnification for third-party overclaims, whether it's by an employee or we would say a co-employee. And I think this leads to one other difference between the parties, which is how the parties think this court or another court, the Texas Supreme Court, should construe the statute. We say that the court should look at the intent and purpose of a statute and try to figure out whether a particular interpretation falls within that intent and purpose. Zurich says that essentially the court should just mechanically look at the word and try to figure out what that word means. They advocate for this approach because as Judge Ho questioned me about it, it uses the word employee in the statute. So, one has to think about intent and purpose. Well, of course, as you well know, over the last 30 years or so, that has been the trend on this court as well as nationally to look more at the language instead of trying to figure out what the legislature had in mind, especially in Texas where there's not a lot of legislative history that can be consulted, even if we thought that was proper. I understand that. And unlike many other states, in Texas there's actually guidance, as Your Honor is well aware, as to what courts are supposed to do when they're interpreting legislation, and Texas does not apply a sort of don't look at the man behind the curtain, just read the word approach. There's specific legislation in Texas, and that's the Texas Government Code, Section 312.005, which states, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy. It also says in the next subsection, 006, that the statutes of Texas, civil statutes, shall be liberally construed to achieve their purpose and to promote justice. So, we would say that the court is not only empowered to, but actually directed to try to interpret a statute in light of the history and purpose behind it. That's what the Texas Government Code expressly states. It's unusual. I mean, I've practiced law in many different states during the course of my thirty or so years, and this is a novel one for me. Um . . . If we were to agree with you on the result, we of course would be reversing Chief Judge Rosenthal's opinion in this case, and can you identify specifically at what pivot point do you think she misunderstood or went wrong on her . . . on her . . . now, obviously, any time you're the appellant, you're going to criticize what the district court wrote. There's nothing wrong with that, but where did she go wrong? Having appeared in front of Judge Rosenthal, I wouldn't exactly be prone to criticizing her, but where I think she turned a corner and went the wrong way is construing the word employee very narrowly and not really focusing as we say that this court or the Texas Supreme Court or she should have in what the evil is that that statute's trying to prevent. As I've said, there's a very broad exception to the bar on indemnification and additional insurance. Um, it says employees, it says agents, it says employees of subcontractors. We think co-employee falls generally within that list of things that the legislature was not intending to prevent indemnification for. Counsel, when you filed this brief, which I guess is now almost over a year and a half ago, October of 2019, you have a string site on page 20 that lists the five cases that have discussed the TAIA in any context using none of them talk about the employee exemption. Have there been anything subsequent? We updated our research, not surprisingly, and certainly on this issue, there's nothing and shockingly, there's very little interpretation or case law under this statute, which is because the thing that's striking to me is that three of these that you have listed here are federal court cases and they're not state court cases. One of them is the Burkle case from the 14th Court involving this dispute, and the other is a San Antonio Court of Appeals decision from 2018 with no petition history. So there's virtually nothing from the Texas courts, I guess it is affirmatively nothing from the Texas courts on the employee exemption. We agree, and that's why we think this is an appropriate matter for certification to the Texas Supreme Court. It's not that this court can't, this court is more than competent of construing Texas statutes. I know I'm standing in front of three Texas lawyers, but we think that's exactly why this should go to the Texas Supreme Court, because one of the factors in Shevin or the other certification cases is whether there's a paucity of authority, and therefore, effectively the court's working off tabula rasa, which is unfortunately what all of us, Zurich, my client, and the three of you are faced with in this particular matter. You've saved time for rebuttal, Mr. Long, thank you. Thank you. Mr. Bowman? May it please the Court, my name is Zach Bowman, and I'm here for Zurich American Insurance Company. I share Mr. Long's sentiments, appreciating being here in person. My first Fifth Circuit argument happened to be a Zoom argument, and while that was exciting, this is even more so, so I appreciate it, and it's a privilege to be here. I want to start by making it clear what I think this court's already aware of in looking at the text, is that the Texas Supreme Court has been clear time and again that with any statutory question, we look to the plain text of the statute, and the truest manifestation of what lawmakers intended is what they enacted. We adhere to this, and enforce the plain language of the statute as written, unless it's ambiguous or would produce absurd results. And I haven't heard any argument today regarding how our construction of the employee exception produces any kind of absurd result. The legislature chooses the specific words that it uses with a purpose, and we're to assume that it leaves out words not chosen for a purpose as well. Well, I mean, I might take your friend on the other side to say that it's absurd to suggest that Burkle is an employer for one statute and not an employer for another statute. That is kind of odd, isn't it, that Burkle would enjoy all of the benefits of being an employer under the TWCA, but none of the responsibility of being an employer under the TAIA? And I think for that, we just have to look to the statutory construction, the language itself. In the TWA, there is a specific provision that addresses this very issue, and says that an agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees, but only for purposes of the workers' compensation laws of the state. So the legislature was very clear in the TWA that that kind of treatment is unique and exclusive to the TWA, and there's no statutory provision within the Anti-Indemnity Act that provides for that sort of treatment. Do you dispute your friend on the other side who says that the purpose of the TAIA is to make unification agreements? Like, do you think that there's a different purpose of the statute? And I understand the textual arguments. I just want to focus on his position. I think we could look at that as part of the concern, but I don't think we even have that under these facts. I mean, I think the core goal of the TAIA is to ensure that parties are responsible for their own negligence. And— Well, Burkle is not going to be responsible for any of its known negligence. I mean, if you win, Burkle gets—is not responsible for any of its—the 90 percent that the jury assigned. So it's the exact opposite of what you just said. Right. Well, and that would be, again, under the workers' comp statutes where we're looking at if there was some intentional conduct, that would be an exception to the exclusivity there. But we didn't have that. Maxim, in this case, is only being held responsible for its own negligence, its 90 percent share. And that's really what was intended by the Anti-Indemnity Act. The only exception is for that specific employee exception. If Lee was an employee of Burkle, we would have a different type of situation here. That would be the type of third-party overaction where Maxim could look back to Burkle for indemnity. But that's simply not the case here. Lee is a Skanska employee, and there's no reason to look to the workers' comp statutory scheme in determining how we apply these anti-indemnity provisions. So Lee is not Burkle's employee and can't create a third-party overaction here. The thing I'm struggling with is I can't figure out what conceivable basis there would be for preventing indemnification in this set of circumstances, where Maxim has no bargaining power vis-a-vis Skanska, right? They're the lesser of Burkle. And to the extent that there's a bargaining power issue between Burkle and Maxim, it goes the other way, right? That is that Maxim is, they're the lesser of the crane. So it just seems like a square pig in a round hole. I'm not sure I understand how they fit together. And I agree, it's somewhat unique, and I think you bring up a good point that Maxim is the lesser of the crane. This was a Maxim contract. We can look at page 985 of the record and see that this was on Maxim documentation. It even provided in there that the indemnity was only enforceable to the extent under Chapter 151. So this comes as no surprise that we're dealing with this situation. But this is not a fact scenario where a general contractor is trying to cram down on a less powerful sub some indemnity language. It's Maxim trying to enforce it as the lesser of a crane. So it is a unique circumstance. I think what Maxim's problem is here is they don't like the results of the underlying case and the liability that was assigned to it, its 10% liability. But under the Anti-Indemnity Act, the legislature's basically outlined that you're responsible for your own negligence, or you can be responsible for your own employees, any harm to your employees regardless of negligence. But what that creates is basically a freedom to contract with the parties. If the parties wish to contract in a way that mitigates risk of future litigation over who caused the accident ultimately, then you can enter into a contract to provide indemnity for any harm to your own employees. But that's just simply not what happened here. And Maxim may take issue with that. But what Maxim's real problem is is what it contracted. It's trying to revisit the underlying circumstances of the contract with Buerkle, and this simply isn't the proper venue to do that. If Maxim had contracted with Skanska, it would be a different story. If Maxim had become part of the CSIP program expressly as part of its contract, that would be a different story as well. But under the facts of this case, the legislature's very clear that it's only injury or death of an employee of the indemnitor, its agent, or its subcontractor. So someone within that indemnitor's control. There's no allegation here that Lee was somehow within Buerkle's control. And so I know they've submitted to the court a chart outlining the relationship between the parties. And so I do want to address the Austin Bridge case where they did find co-employers, co-employees could be interchangeable terms under that context. And again, to be clear, that sort of treatment is unique and exclusive to workers' comp. But even if we were going to consider that here, we don't have the kind of association between the parties that creates Lee being an employee of Buerkle. The Austin Bridge case, we outlined a different chart on page 35 of our brief where it was completely straight vertical privity between those parties. Everybody had signed on with the CSIP all the way down. So Baylor was the employer of all those parties who were co-employees of Baylor. And all those parties were also co-employers of everyone below them. So a straight vertical situation. That's not the facts that we have here. And I think Judge Rosenthal pointed that out perfectly, that the associations between the parties are critical and we don't have the sort of facts that would support treating Lee as Buerkle's employee, even if we did look at workers' comp. With regards to the standing issue, I wanted to also direct us to the policy language on that. And again, we're... Counsel, before we get to that, and I want to hear the standing argument, but before we do it, can you help me understand how this is a proper cross-appeal? Well, Your Honor, I think you raise an interesting question in terms of whether it ultimately affects the result. I think it's a cross-appeal because we didn't want any kind of waiver of that issue because I think this standing argument is legitimate. I think what's interesting about this case is the enforceability of the indemnity provision somewhat kind of works its way into the standing argument. They've made waiver arguments that Zurich somehow waived this exclusive assigned right by not pursuing it. And we briefed that that would have been a frivolous claim, and that's why it was not pursued. So in analyzing whether it's frivolous, you somewhat have to get into the Anti-Indemnity Act to look at the standing issue. So I completely understand the argument on the merits, but what I'm trying to ask is an antecedent question, which is that since the 1920s, the Supreme Court has been very clear that a cross-appeal is mandatory where the prevailing party below, that's you, wants to expand your rights under the judgment or lessen your opponent's rights under the judgment. I understand you're not trying to do that, you're just trying to defend the judgment. And the corollary of the so-called American Railway Rule, that's the one from the 1920s, is that you cannot cross-appeal when you're not trying to expand your rights or lessen theirs. And the reason, as we've explained in a long series of cases, is that when you do that, it expands the briefing, right? It gets a final fourth brief, effectively a surreply, it confuses the issues, it makes us focus on exactly what's happening to the judgment below. This is all a jurisdictional problem, it doesn't matter whether they file the motion to dismiss or not, it's incumbent upon us to dismiss the cross-appeal where it's wrongfully or unnecessarily taken. And so it's not obvious to me, it seems like what I'm hearing from you is that really it's just an alternative ground for affirmance that appellees raise in our Court every day. Well, and it is a little different. Again, I wouldn't say it's an alternative ground for affirmance because we would prefer the Court actually reverse and render that there is no standing in this case. But in doing so, it does not consider that the— Why is that? Because— In theory, that would allow them to sue you again. I'm sorry. You're actually worse off. We'd be worse off because, well, I'm sorry, I didn't— They could sue you again. I don't see how they'd sue us again. Practically speaking, they may not be able to, but if you win a mere standing win, then all they have to do is find another vehicle where they do have standing, whereas a merits win is res judicata. I agree with you there, but I think— Why do you prefer a standing win? I think the standing is important here because under that deductible endorsement, that affects ultimately what the payout is under the policy because the reimbursement was $3 million. Zurich had to pay a chunk of money itself. So, if the Court disagreed with us on the Anti-Indemnity Act, we would want the argument that there is no standing because ultimately, if we have to go back down to the trial— Well, if there's no standing, then we wouldn't reach the merits. So, I think we have to ask the question, if there's no standing, how are you better off? And we may not be ultimately, Your Honor. I mean, I think we clearly win this case under the Anti-Indemnity Statute. But right now, you're out $0, right? Because every dollar that's been paid has been paid by Maxim. No, there was a portion paid. Oh, that's right, like $300,000 or something. Correct. But the amount in controversy, you're out $0, right? Like, the $300,000 is gone no matter what. If we just affirm, it's not like you're going to get the extra $300,000. I believe there is a scenario, Your Honor, where that $300,000 could be at issue depending on how this court interprets the deductible endorsement and whether it fully assigns rights to Zurich. Really? That's not in the briefs. So, that would be intrigued by that. And I apologize if that's something we need to clear up by post-submission. Briefly, we will. But I think the argument here is clear that this is fully assigned to Zurich, whether the funds have been reimbursed or not. And that there never should have been litigation in this case getting to the issue of the Anti-Indemnity Act. Addressing the issue of certification, I don't know if opposing counsel got to get into it very much. I know we did brief the subject before this court. This court's been very clear that where there are sufficient sources of state law to allow principled rather than a conjectural conclusion, that certification isn't necessary. The standard isn't just that this exact issue hasn't yet been dealt with. As long as this court has a principled set of rules to guide it in making its decision, it can make that eerie guess. And the absence of law directly on point is not the standard. And in fact, I think it's somewhat telling that we haven't had any courts of appeals debating the interpretation of this employee exception. Because from the statutory language, it appears very clear. If we interpret the plain language of the statute and apply it as written, there should be no debate here. We don't need to get to trying to interpret and incorporate workers' comp principles into our Anti-Indemnity Act analysis. Are you familiar of another case where we've refused to certify in the absence of a single decision from a state court even interpreting the relevant statute? I've never seen one where there's literally not a single case from anywhere in Texas, not a district court, not a court of appeals, certainly not a Supreme Court decision, that even cites the provision. Right. And I think I'm not aware of a specific case where the court's dealt with that exact scenario. But I think given that we have guidance from the Texas Supreme Court on how to interpret the statute, I think the result is still very clear. And I think a certification to the Texas Supreme Court would yield the same kind of plain language analysis that we're asking this court to do. And so I think this court has significant guidance. What I think Maxim is essentially asking the court to do today is read language into the Anti-Indemnity Act that is not there and broaden the exception in a way that would eventually swallow the rule. The employee exception is limited to employees or subcontractors or agents of the indemnitore. And Maxim would have that essentially read any employee on the project, which would thwart the purpose of the statute because it is limited to employees of the indemnitore. So if the court doesn't have any further questions, we would ask the court to reverse and render as to the standing issue, but affirm the lower court's decision on the Anti-Indemnity Act as it relates to the standing issue. Alternatively, to affirm simply on the Anti-Indemnity Act. Thank you, Mr. Bowman. Thank you. Mr. Long, you saved time for a bottle. Thank you. It's somewhat telling that when Zurich argues the Anti-Indemnity Act, it Velcros itself to the term employee and says that no one should look past that word to figure out what anybody meant. And then its own policy, when the word reimbursable occurs, Zurich ignores the rest of its policy, which talks about things that are either reimbursable or reimbursed. And that's why we think the standing argument itself goes absolutely nowhere. Because it's violently opposed to the actual literal construction of Zurich's own policy. And so we think the standing argument goes nowhere. As for certification, Judge Oldham asked a really good question, which is really with an embedded question. What should a court do when there's no authority whatsoever to give it guidance on a statute that we would say ultimately is of critical importance? I mean, I both do insurance coverage work and I'm a construction lawyer. And I can tell you that this contracting regime in Texas is alive and well. That is, there are lots of OSIPs, lots of CSIPs, and this issue is certain to reoccur. It is surprising. What's your best authority for the proposition that the Texas Supreme Court might treat the word employee to include coworker? I can't point to a case. I can point to, in reality, what the legal differences and similarities are. The court, the Texas legislature, had no problem whatsoever granting or allowing indemnification and accordingly insurance coverage or additional insurance coverage for injuries to employees, agents, and subcontractors of any tier. We think that co-employee, which is effectively legally the same relationship, wouldn't be any different. That's what I don't understand. How is co-employee similar to employee? They seem totally different to me. In this case... I tell an employee what to do. Because as a matter of workers' comp protection, they're identical. So what happened in the underlying case? Mr. Lee, the employee of the general contractor, was injured by the actions of a supervisor at Buerkle. Because of the CSIP regime, every party got complete, except Maxim, which wasn't in the CSIP, got complete indemnification or complete tort immunity from all of the other parties, just like they would have, whether they were the employer of... just like Buerkle would have had been Lee's actual employer. And so we submit that legally, the effect of these relationships is exactly the same. The point being the following... That just sounds like a policy argument rather than a textualist argument. I think it's... You're saying there's no reason to treat the two situations differently. I think it is... But they are different situations. Right. We agree. I mean, the word employee appears in the statute. The question really is, would the... would... should a Texas court, would the legislature view employee or co-employee any different? It would not... In our view, it would not. It would view them exactly the same. All right. Thank you, Mr. Long. Thank you. The case is under submission. Again, we appreciate counsel's cooperation with us on this case. The court is in recess.